UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUROCHEM GROUP AG<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A.,<br>TRUIST FINANCIAL CORPORATION,<br>TRUIST BANK | CASE NO. 1:24-mc-00354 |

**<u>*EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782</u>**

COMES NOW, Applicant, EuroChem Group AG, a company incorporated under Swiss law, with its registered office in Zug (Switzerland), registered with the Register of Companies under number CHE-306.864.578 as successor by merger to EuroChem Trading GmbH, a Swiss corporation, by and through its undersigned counsel and applies for an *ex parte* Order pursuant to 28 U.S.C. § 1782 to obtain discovery in the form of subpoenas to be served on (1) banks located within the Southern District of New York, and for the production of relevant documents in the possession, custody, and/or control of JPMorgan Chase Bank, N.A., Truist Bank and its parent Truist Financial Corporations (collectively the "Banks"), as well as currently unknown third parties which will be determined by the disclosures provided by the Banks in response to the subpoenas.

The discovery sought relates to an invoice spoofing incident involving the Applicant and their third-party vendor, OneSource Services LLC, in which $600,000 was sent by Applicant from its account at JPMorgan Chase Bank, N.A. in response to an invoice sent from a spoofed OneSource account, listing a Truist Bank account number that turned out not to be an actual OneSource owned account. The discovery seeks to trace those funds from Chase to Truist and to whatever third party spoofed the invoice and to whatever further account(s) the funds were transferred.

## I. Factual Background

Applicant has done business with OneSource Services LLC ("OneSource"), a Masschusetts company, for many years. Typically, OneSource sends a monthly or quarterly invoice for its services by email to Applicant at a EuroChem Group AG email account from a OneSource email account. That invoice is usually confirmed either by a further email exchange or a phone confirmation, and then is paid by wire transfer from Applicant's account at Chase, historically to OneSource's email account at TD Bank. See the Declaration of Vladimir Trofimchuk ("Trofimchuk Decl.") at para.4.

In this particular case, the OneSource employee that sent the invoice was the President of OneSource, John Joseph Fitzpatrick. He sent an email on September 27th, 2023, to EuroChem AG employee Vladimir Trofimchuk, for $600,000.00 for a Consulting Agreement extension to perform consulting services. The $600,000.00 invoice directed that the payment should be sent to the usual OneSource Services LLC TD Bank # 3221 account of OneSource Services LLC in Quincy, Massachusetts. Trofimchuk Decl. at para. 5 and Exhibit 1 thereto.

Shortly thereafter, on that same day, fraudsters by currently unknown means somehow spoofed Mr. Fitzpatrick's e-mail and fraudulently sent a further email that claimed the previously provided wiring information for payment to OneSource at TD Bank was out of date and asking for permission to provide Mr. Fitzpatrick with updated account information. Trofimchuk Decl. at para.6 and Exhibit 2 thereto. Mr. Trofimchuk responded to that email, confirming that he was to pay the "updated bill" that he had received "a couple hours ago."

Mr. Trofimchuk believed he was communicating with Mr. Fitzpatrick but was apparently communicating with whoever spoofed Mr. Fitzpatrick's account. Trofimchuk Decl. at para. 7 and Exhibit 3 thereto. The spoofer, signing as Mr. Fitzpatrick ("John") confirmed that payment should be made to the "attached updated account information." That response included a revised invoice for $600,000 payable to an account at Truist Bank in Wilson, North Carolina, Account # 1210008146207, under the name of OneSource Services LLC, which is an impostor company

apparently located in Maryland, presumably created solely to perpetrate the fraud, and unrelated to the true OneSource. Trofimchuk Decl. at para. 8 and Exhibits 4 and 5 thereto.

On or about September 29th, 2023, Applicant, as a result of this fraud, paid the $600,000.00 as instructed by the fraudulent wiring instructions to the impostor OneSource Services LLC into their Truist Bank account. Trofimchuk Decl. at para. 9.

A few days later, on October 5th, 2023, OneSource inquired with Mr. Trofimchuk about the status of payment (which OneSource had not received because it was sent to the fraudster's account). Mr. Trofimchuk sent the banking transaction confirmation document showing that the funds had been sent – but as it turned out, sent to the impostor OneSource Services LLC entity at Truist Bank. Mr. Fitzpatrick immediately called the Truist Bank Fraud Department to report the theft. Although they refused to discuss the transaction because the account was not in Mr. Fitzpatrick's name, they reassured him that they would immediately freeze any and all of that money from that transaction if it was still in that account. The Truist Bank Fraud Case File is # UFO 00000128668. Trofimchuk Decl. at paras.10-11.

Chase issued a recall notice to Truist and shortly thereafter, Applicant, through counsel, contacted Truist to attempt to identify the fraudsters and recover the stolen, presumably frozen, funds. Truist was uncooperative despite several further efforts. Counsel followed up with a phone conference with the Truist fraud department on November 6, but Truist continued to refuse to provide information. They refused to provide any details but did indicate they would respond to the Chase recall notice within 30-60 days. No response has been received. Trofimchuk Decl. at para. 13.

Applicant understands from Chase that Truist demanded an Indemnity Agreement, holding them harmless, and that the funds were blocked but could not be returned to Applicant without an indemnity agreement. That Indemnity Agreement was sent by Chase to Truist via the SWIFT system on February 2 and was sent directly to Truist by counsel via email that same day. Counsel contacted Truist again by phone and email on February 9. Trofimchuk Decl. at para. 14.

Finally, on February 21, counsel was able to speak with Truist, and was told that Truist would only deal directly with Chase because hold harmless agreements are "bank to bank transactions," and that the Indemnity Agreement previously provided by Applicant was not sufficient. That Indemnity Agreement was provided again to Truist directly from Applicant on April 4, 2024. No response has ever been received, and Truist has not returned the funds. Trofimchuk Decl. at para. 15.

At this point, Applicant, a Swiss entity, seeks to obtain discovery from Chase and Truist in relation to this fraudulent transfer in order to potentially file an action in Switzerland against the fraudsters, or whatever other third parties may have been involved. The discovery sought will likely lead to the identity of the fraudsters, and/or the banks to which the funds were further transferred, so Applicant seeks permission to also serve subpoenas on any relevant third parties discovered through the Chase and Truist subpoenas for use in a potential action in Switzerland without further application, if and when any relevant third parties are discovered.

This discovery application is brought *ex parte* because "[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to §1782 *ex parte*." *Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012) (summary order); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 78 (2d Cir. 2012) (reviewing district court's grant of motion to quash subsequent to *ex parte* grant of §1782 application); *In re Edelman*, 295 F.3d 171, 173-175 (2d Cir. 2002) (same); see also *In re Hornbeam*, -- Fed.Appx. --, 2018 WL 416486, *2 (2d Cir. Jan. 16, 2018) (summary order) ("this court has decided appeals from motions to quash *ex parte* § 1782 subpoenas without identifying any impropriety in the *ex parte* nature of the § 1782 application.").

Requests for transfer records from banks are routine and rarely opposed by such banks. In previous cases seeking similar discovery under § 1782, one Court noted that "New York Banks routinely receive and comply with similar subpoenas issued pursuant to 28 U.S.C. §1782. In response … the Banks have searched their electronic transaction databases for the relevant terms timely provided counsel with sample electronic spreadsheets listing the basic information

relating to any wire transfers that satisfy the search parameters. *In re Application of Hornbeam Copr.*, 2014 WL 8775453, *1 (S.D.N.Y. Dec. 24, 2014)

## II. **Documents Sought**

Specifically, the Applicant's proposed subpoenas to the Banks seek:

A. Copies of any orders, instructions or wire transfers received from any person or entity (including but not limited to, any payor/transferor bank to a payee/transferee bank) for the benefit or credit of, or with any reference to "OneSource" or "OneSource Services LLC," including but not limited to the September 29, 2023 fraudulent transfer to the Truist Account 121008146207, which is the subject of Truist Bank Fraud Case File # UFO 00000128668 ("the fraudulent transaction). This includes both incoming and outgoing transactions.

B. Copies of any orders, instructions or wire transfers received from any person or entity (including but not limited to, any payor/transferor bank to a payee/transferee bank) for the benefit or credit of, or with any reference to any "OneSource" or "OneSource Services LLC", including but not limited to the fraudulent transaction. This includes both incoming and outgoing transactions.

C. Copies of any orders, instructions or wire transfers received from any person or entity (including but not limited to, any payor/transferor bank to a payee/transferee bank) for the benefit or credit of, or with any reference to any "OneSource" or "OneSource Services LLC", including but not limited to the fraudulent transaction.

D. Copies of any other documents in the possession of the banks relating to the "One Source" or "OneSource Services LLC" in which the banks have acted in any capacity, together with any electronic and/or paper records thereof for the period beginning January 1, 2023 to the present.

E. Copies of any other documents in the possession of the banks relating to "OneSource" or "OneSource Services LLC," including bank account opening and closing documents, signatory cards, correspondence relating in any way to "OneSource" or "OneSource Services LLC."

## III. <u>Legal Analysis</u>

### A. Jurisdiction and Venue

Jurisdiction is proper pursuant to 28 U.S.C. § 1782 as this Application is for discovery involving documents located within the Southern District of New York, and are necessary to assist Applicant in a foreign court proceeding. Applicant is a Swiss entity and is contemplating an action against the fraudsters in Switzerland. Venue in the Southern District of New York is appropriate because the discovery being sought is from corporations located within the Southern District's judicial district.

### B. The Requirements of 28 U.S.C. § 1782 are met here.

The current application is brought for the discovery of documents that will be used by the Applicant in pursuing an action in Switzerland or other foreign countries if the discovery reveals further transfers of the stolen money, and the use of 28 U.S.C § 1782 is an appropriate method by which to do so.

Section 1782, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," authorizes federal district courts to order discovery to assist applicants in obtaining evidence in the United States for use in foreign legal proceedings. "[T]he statute has, over the years, been given increasingly broad applicability." *Bran`di-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations and quotations omitted). To obtain discovery under Section 1782, an applicant must satisfy three statutory requirements: (i) the person from whom discovery is sought must reside or be found within the district; (ii) the discovery must be for use in a proceeding before a foreign or international tribunal; and (iii) the application must be made by an interested person. 28 U.S.C. § 1782 (a).

#### 1. The Three Mandatory Factors under Section 1782 are Satisfied

##### i. The Banks From Whom Discovery Is Sought Reside In Or Are Found Within This District

The Banks from whom discovery is sought are "found" in this Judicial District. A company is found where it is incorporated, headquartered or where it is engaged in "systematic

and continuous activities." *In re Godfrey*, 526 F.Supp.2d 417, 422 (S.D.N.Y. 2007). Further, a respondent is found if physically present in the district. *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) (respondent is "found" if physically present in the district).

The Applicant seeks production of documents by JPMorgan Chase Bank, N.A.; Truist Financial Corporation and Truist Bank. Chase obviously does extensive business in this District so clearly can be found here. Trofimchuk Decl. at paras. 14-18. Truist Financial Corporation is the parent company of Truist Bank. Truist is one of the 10 largest banks in the US, does business in New York and in New York County, as shown on the certificate of foreign registration filed with the New York Division of Corporations, attached as Exhibit 6 to the Trofimchuk Declaration. Its registered agent is CSC which is located at 19 W 44th St Suite 200, New York, NY 10036, United States. Service should be provided for Truist on CSC. Thus, the application satisfies the first Section 1782(a) requirement.

**ii. The Discovery Sought By This Application Is For Use At Least In A Reasonably Contemplated Proceeding In Switzerland**

The application satisfies the second criteria of Section 1782 (a) because the documents requested are "for use" at least in reasonably contemplated proceedings in the Applicant's home country, Switzerland. "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004). Instead, the Supreme Court has held that Section 1782(a) requires only that a proceeding "be within reasonable contemplation." *Id.* at 259; *See also In re Servicio Pan Americano de Proteccion*, 354 F.Supp.2d 269, 274 (S.D.N.Y. 2004) ("Section 1782 may be invoked even where foreign legal proceedings are not even underway").

In addition to use a potential Swiss proceeding, the discovery will also be used to potentially identify third parties who may have received further transfers of the fraudulent payment. Those proceedings, if any, might also proceed in Switzerland or other foreign countries, if this discovery reveals further transfers of the stolen funds. Further, discovery sought

from banks to demonstrate the transfer of funds to support a claim is relevant to the foreign action and satisfies the "for use" requirement. *In re Application of Hornbeam Corp.*, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014).

The Applicant's claims against third parties which were involved in the fraudulent payments, or who received further transfers therefrom, are clearly contemplated proceedings despite the fact that the identity of such parties and the location of the actions to be brought against them have yet to be conclusively identified. The discovery sought here will enable the Applicant to do precisely that and such action fits well within the "for use" in contemplated foreign procedure grounds of § 1782. *In Re Hill*, 2005 WL 1330769, at *5, FN 4 (holding where liquidators had "asserted quite serious allegations sounding in fraud" and "that the Liquidators may use the fruits of discovery to pursue potential claims against third parties," those claims "may be considered 'reasonably contemplated'").

**iii. The Applicant Is An Interested Person In Any Foreign Action**

The application also satisfies the third prong of the Section 1782 requirements because, as the victim of the fraudsters, Applicant qualifies as an "interested person" under Section 1782. *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (as a party to the foreign proceeding, the applicant qualifies as an interested person); *Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (a party to the underlying foreign proceedings "is an 'interested person' within the meaning of the statute").

**iv. No Other Factors Weigh Against Allowing Discovery**

In addition to satisfying the above three requirements, there are no factors which would argue against allowing the discovery. The Second Circuit emphasized that the goals of Section 1782 should be considered in deciding motions brought under the statute. "There are two oft-cited goals of § 1782(a). The statute has the twin aims of 1) providing equitable and efficient means to assist parties engaged in international litigation and, by so doing, 2) inviting foreign countries to provide similar assistance to our courts.…Further, § 1782(a) should not be applied in a way that

will create obvious confusion or skew the results in the foreign litigation." *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002).

These aims will be fulfilled here by granting the requested discovery. The discovery sought will assist the Applicant in contemplated Swiss proceedings at the very least, and possible in other foreign countries.

**2. The Application Also Satisfies *Intel's* Four Discretionary Factors**

Once the statutory requirements are met, as they are here, courts consider the four discretionary factors set forth in the *Intel* case to determine whether to exercise their discretion to grant the 1782 application: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies;" and (iv) whether the discovery sought is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65.

**a. The Applicant Is A Participant In The Foreign Proceeding**

The first discretionary *Intel* factor undoubtedly favors granting the discovery. The banks are not claimed to have participated in any of the wrongdoing, and thus "are not expected to be parties to any future" litigation. *In re Application of Hornbeam Corp.*, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014) (finding first factor weighed in favor of granting 1782 Application where banks "not expected to be parties to any future" litigation).

**b. The Swiss Court Would Be Receptive To The Requested Discovery And The Character Of Any Swiss Proceeding Favors Granting The Application**

The second discretionary *Intel* factor also favors discovery. There is no restriction on the use of the foreign discovery sought here in any Swiss action. Other courts have found that discovery obtained under Section 1782 could be used in Swiss proceedings. See *In re Alberto Safra for An Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. §*

*1782*, No. 21-MC-640 (GHW) (JLC), 2022 U.S. Dist. LEXIS 150169 (S.D.N.Y. Aug. 22, 2022). Moreover, as the *In re Alberto* court noted, this Court need not decide whether the discovery will be admissible in Switzerland to be discoverable here, as that is a decision for the Swiss courts. *See, e.g.,* *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("requiring a district court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign law and such '[c]omparisons of that order can be fraught with danger'") (internal citations omitted). The Second Circuit has made clear that district courts should avoid undertaking "an extensive examination of foreign law" that would likely lead to a "superficial" ruling based on "a battle-by-affidavit of international legal experts." *Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995)*. Courts should only find that the requested discovery would be rejected in the foreign proceeding if the opponent of the Section 1782 application presents "authoritative proof . . . that specifically addresses the use of evidence gathered under foreign procedures." *Id.* at 1100. Authoritative proof consists of the "forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Id.*; *see also Schmitz*, 376 F.3d at 84. Because no such proof likely exists in light of the holding in *In re Alberto* and the cases cited therein, this factor, too, favors discovery.

**c. The Applicant Is Not Circumventing Any Swiss Proof-Gathering Restrictions**

For the same reasons, the Applicant is not circumventing any limitation on the use of the discovery that might be applied by the Swiss court. There is no requirement that an applicant first attempt to obtain the discovery sought in the foreign proceedings (referred to as the quasi-exhaustion requirement and routinely rejected). *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) ("We have rejected such a 'quasi-exhaustion' requirement, reasoning that it finds no support in the plain language of the statute and runs counter to its express purposes.").

Moreover, "[t]here is also no requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of

the underlying proceeding." *Gorsoan Limited v. Bullock*, 652 Fed.Appx., 7, 9 (S.D.N.Y. 2016) (summary order). The fact that the discovery sought may exceed discovery available in the foreign proceeding or otherwise be unavailable in that proceeding has also been rejected. Nor is there a requirement that the discovery sought be proven to be admissible or usable at the present stage of the proceeding. *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015) ("A 'proceeding' means the entire proceeding, not merely its initial stage."). Because there are no proof-gathering restrictions under Swiss law implicated here, this factor also favors the discovery. *In re Application of Hornbeam Corp.*, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014) ("Because there is no reason to believe that Hornbeam's effort to obtain materials not discoverable in the BVI through § 1782 would undermine 'principles of comity' or 'cooperation' with the BVI, this factor weighs in favor of – or at least not against – granting Hornbeam's Application."). This factor therefore also favors discovery.

**d. The requests are narrowly tailored and not "unduly intrusive or burdensome"**

The fourth *Intel* factor favors the Applicant because the requests for discovery are not overly burdensome or duplicative. *See Esses v. Hanania (In re Esses)*, 101 F.3d 873, 876 (2d Cir. 1996) (per curiam) (affirming discovery where there was no "indication that the district court's order is overly burdensome or duplicative"); *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) (no undue burden where the document request was "specifically and narrowly tailored").

In this case, the Applicants' discovery requests are narrowly tailored to the fraudulent transaction at issue, other potential information relating to the fraudsters, and possible third parties that were involved in or benefitted from the fraud. To the extent that the Applicants' document requests somehow create burden issues, the Applicants will, of course, meet and confer with the banks in an effort to resolve them.

## IV. Conclusion

Accordingly, for the reasons set forth in this Application and the Declaration of Vladimir Trofimchuk and the exhibits thereto, Applicant respectfully requests that the Court grant it permission to serve the Banks with a respective subpoena substantially in the form of the subpoena attached to the Trofimchuk Declaration at Exhibit 7 and give Applicant permission without further application to serve subpoenas seeking similar information on any third parties that are identified through that discovery as being involved in the fraudulent scheme.

A form of the proposed Order granting the requested discovery is filed separately herewith.

Dated: August 5, 2024

Respectfully submitted,

_*/s/ Patrick Salisbury*

Patrick Salisbury
SALISBURY & RYAN LLP
1345 Avenue of the Americas
2nd Floor
New York, New York 10105
Tel: 212.977.4660
Fax: 212.977.4668

*Attorneys for Applicant*